UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HEIDI LYN WOLFANGER,

                                    Plaintiff,        **No. 6:16-cv-06688(MAT)**
                                                      **DECISION AND ORDER**

                    -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                                    Defendant.

_____

## I.  Introduction

Heidi Lyn Wolfanger ("Plaintiff"), represented by counsel,
brings this action pursuant to Titles II and XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
Carolyn W. Colvin, Acting Commissioner of Social Security ("the
Commissioner"),[1] denying her applications for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI"). The
Court has jurisdiction over the matter pursuant to 42 U.S.C.
§§ 405(g), 1383(c).

## II.  Procedural Status

Plaintiff filed an application for DIB on December 20, 2012,
and an application for SSI on April 25, 2013, alleging disability
since June 12, 2000. Plaintiff's counsel later amended the
disability onset date to. These

---

[1] Carolyn W. Colvin resigned as Acting Commissioner in January of 2017, and
her successor, Nancy A. Berryhill, is no longer serving in that position. The
Clerk of Court therefore is directed to substitute "The Commissioner of Social
Security" for Carolyn W. Colvin as the defendant in this action. See 20 C.F.R.
§ 422.210(d).

applications were initially denied. On September 23, 2014, a videoconference hearing was held by Administrative Law Judge Lisa Martin ("the ALJ"). (T.32-62).[2] Plaintiff appeared with counsel in Rochester, New York, and testified. Impartial vocational expert Timothy Bobrowski ("the VE") also appeared and testified. The ALJ issued an unfavorable decision on January 30, 2015. (T.15-26). The Appeals Council denied review on August 23, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

## III. The ALJ's Decision

Applying the five-step sequential evaluation, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff was insured for DIB through March 31, 2017. (T.17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 12, 2000. (T.17). At the hearing, Plaintiff testified that she attempted to return work in 2012 briefly but was unable to sustain the work because it required lots of walking. She also performed some janitorial work in 2013; however, she was only able to work two days. The ALJ accordingly characterized these as unsuccessful work attempts.

---

[2]

Citations in parentheses to "T." refer to pages in the certified administrative transcript.

At step two, the ALJ found that Plaintiff has the following "severe" impairments: Meniere's disease,[3] bilateral hearing loss, history of right breast cancer, chemotherapy-induced peripheral neuropathy, unspecific autoimmune disorder, mild carpal tunnel syndrome, headaches, depression, and anxiety. (T.17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (T.18). The ALJ gave particular consideration to Listings 3.03 (asthma), 11.00 (neurological disorders), 12.04 (affective disorders), and 12.06 (anxiety disorders).

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work, with the following non-exertional limitations: she must have the ability to change positions as often as every 30 minutes for one-to-two minutes; she must avoid ladders, ropes, and scaffolds; she can have no more than occasional postural motions; she needs to avoid constant upper extremity reaching, handling, fingering, and feeling; she is limited to moderate noise work environments; she must avoid all dangerous work hazards, including unprotected heights and exposed machinery; she must avoid

---

[3]

Meniere's disease is an inner ear disorder that causes episodes in which the patient experiences feelings of spinning (vertigo), ringing in the ear (tinnitus), sometimes a feeling of fullness or pressure in the ear, and fluctuating hearing loss with a progressive, ultimately permanent, loss of hearing. See https://www.mayoclinic.org/diseases-conditions/menieres-disease/symptoms-causes/syc-20374910 (last accessed May 25, 2018).

all extreme heat, humidity, and cold conditions; she is limited to routine, simple tasks not requiring fast assembly quota pace work; she is limited to no more than occasional interactions with coworkers and the public, due to her hearing difficulties. (T.20).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as an insurance clerk (Dictionary of Occupational Titles ("DOT") code no. 214.362-022) because it exceeded her RFC. (T.24).

At step five, the ALJ asked the VE to assume a hypothetical person of Plaintiff's age (33 years-old on the onset date), and with her education (at least a high school education), work experience, and RFC. The VE identified the following representative jobs in the national economy that such a hypothetical person could perform: inspector (DOT code no. 726.684-050, unskilled, sedentary work with 14,000 positions nationally and 1,000 positions in New York); surveillance system monitor (DOT code no. 379.367-010, unskilled, sedentary work with 28,000 positions nationally and 2,000 positions in New York); and sorter (DOT code no. 521.687-086, unskilled, sedentary work with 16,000 positions nationally and 1,100 positions in New York). (See T.25 (citing T.59-60)). The ALJ accordingly found that Plaintiff has not been under a disability, as defined in the Act, during the relevant period.

## IV.  Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive").  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted).  The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted).  "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## V.  Discussion

Plaintiff contends that reversal of the Commissioner's decision is warranted for the following reasons: (1) the ALJ's RFC determination is not supported by substantial evidence because it does not sufficiently align with the opinion of consultative physician, Dr. Karl Eurenius, which the ALJ purported to afford "significant" weight; (2) the Appeals Council erred in declining to find that consultative physician Dr. Harbinder Toor's January 2015

-5-

opinion constitutes new and material evidence warranting review of the ALJ's decision; (3) the ALJ erred in assessing the opinions offered by treating physician Dr. Russell Maggio.

**A.    RFC Unsupported by Substantial Evidence**

Plaintiff contends that the ALJ failed to reconcile the RFC assessment with the manipulative limitations assigned by consultative physician Dr. Karl Eurenius. The Commissioner argues that the ALJ is not required to accept every portion of a medical source's opinion and, in any event, the omission was harmless error because the manipulative limitations imposed by Dr. Eurenius were only "mild to moderate."  The Commissioner points to SSR 96-9p and argues that only "significant" manipulative limitations on the ability to handle and work with small objects would substantially erode the unskilled sedentary job base. Therefore, the Commissioner concludes, the ALJ was not required to consider any limitations of a lesser severity in the RFC.

However, as Plaintiff argues, the Commissioner's argument goes to the analysis an ALJ must perform at step five, i.e., whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). In formulating the RFC, on the other hand, the ALJ is not including only those limitations that, standing alone, would significantly erode a particular job base at step five, because the number of jobs that a claimant can perform

is determined only after the ALJ formulates the claimant's RFC, i.e., what a person is still capable of doing despite limitations resulting from her physical and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

In determining a claimant's RFC, the ALJ must base his findings on "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Here, the ALJ found that peripheral neuropathy and carpal tunnel syndrome were among Plaintiff's "severe" impairments. Dr. Eurenius, whose opinion the ALJ assigned "significant weight," that Plaintiff is "mildly to moderately limited in activities requiring fingering, lifting, or managing with the hands due to carpal tunnel syndrome and chemotherapy." (T.422). However, the ALJ did not include any manipulative limitations in the RFC assessment. Moreover, in weighing Dr. Eurenius' opinion, the ALJ only mentioned the limitations assigned by Dr. Eurenius with regard to Plaintiff's vertigo,[4] stating that such restrictions "are consistent with the claimant's history of vertigo and headaches." (T.23).

---

[4] Dr. Eurenius stated that Plaintiff was "moderately limited in activities, during which sudden episodes of vertigo would injury [sic] herself and others." (T.23).

The Commissioner argues that an ALJ is not required to accept all portions of a medical source's opinion, particularly when they are not supported by substantial evidence. Rather, the Commissioner states, ALJs "must weigh medical source statements under the rules set out in 20 C.F.R. [§§] 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5p, 1996 WL 374183, at *1 (S.S.A. July 2, 1996). The Commissioner asserts that the ALJ properly noted (T.21) that Plaintiff demonstrated full strength in her extremities, full grip strength, and intact finger dexterity during the consultative evaluation. (T.21, 422).

However, the ALJ did not make these observations in the context of discussing her weighing Dr. Eurenius' opinion. Therefore, the Commissioner's argument consists of impermissible post hoc rationalizations not apparent from the face of the ALJ's decision. See, e.g., Snell v. Apfel, 177 F. 3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.").

The ALJ asserted that there was "no evidence to suggest her symptoms would prevent her from sustaining hand activities on a frequent basis, during full-time work." (T.22). The Commissioner defines "frequently" as occurring "from one-third to two-thirds of the time. . . ." Titles II & XVI: Capability to Do Other  Work –

The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *7 (S.S.A. 1985). However, it is not accurate to say there is "no evidence to suggest" any limitations on frequent manipulative activities. Notably, the ALJ had before her the opinion evidence of Dr. Eurenius stating that Plaintiff was "mildly to moderately limited in activities requiring fingering, lifting, or managing with the hands. . . ." (T.422). At a minimum, Dr. Eurenius' assessment of mild to moderate limitations in performing manipulative limitations suggests a possibility that frequent handling and fingering might pose a problem.[5] See, e.g., Malone v. Comm'r of Soc. Sec., No. 08-CV-1249(GLS/VEB), 2011 WL 817448, at *10 (N.D.N.Y. Jan. 18, 2011) ("A job in 'the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.' SSR 83-10. The only direct evidence in the record of [the claimant]'s abilities in this regard is Dr. Wahl's non-specific indication of 'moderate' limitation. At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem.")). While the ALJ "is free to resolve issues of

---

[5]

Plaintiff points out that the abilities to finger and manage with the hands are essential to the performance of the jobs identified by the VE. Plaintiff argues that had the additional manipulative limitations been included, Plaintiff would not be able to perform these jobs. For instance, "sorter" (DOT code no. 521.687-086) requires "frequent" reaching, handling, and fingering. DICOT 521.687-086 (G.P.O.), 1991 WL 674226. Further, the job of "inspector" (DOT number 726.684-050) requires constant reaching, handling, and fingering. DICOT 726.684-050 (G.P.O.), 1991 WL 679601.

credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983).

For the foregoing reasons, the Court finds that the ALJ's RFC is not supported by substantial evidence. See, e.g., Sweat v. Astrue, No. 08-CV-1108 FJS VEB, 2011 WL 2532932, at *6 (N.D.N.Y. May 23, 2011) (concluding that RFC not supported by substantial evidence where "ALJ noted the consultative examiners' findings that [the claimant] would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress)"), report and recommendation adopted, No. 1:08-CV-1108 FJS/VEB, 2011 WL 2518830 (N.D.N.Y. June 24, 2011). Furthermore, the RFC determination relies on the impermissible cherry-picking of evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant. See Trumpower v. Colvin, No. 6:13-cv-6661(MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015) ("While an ALJ is entitled to resolve conflicts in the evidentiary record, [he or] she 'cannot pick and choose evidence that supports a particular conclusion.'") (quoting Smith v. Bowen, 687 F. Supp. 902, 904 (S.D.N.Y. 1988); citations omitted).

**B.    Error by Appeals Council**

**1.    Legal Principles**

Pursuant to the Commissioner's regulations, the Appeals Council must consider new evidence where "(1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010) (unpublished opn.) (citing 20 C.F.R. §§ 416.1470(b), 416.1476(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); other citation omitted). The Second Circuit has articulated a three-pronged standard for determining whether a § 405(g) remand to consider new evidence is appropriate. E.g., Tirado v. Bowen, 842 F. 2d 595, 597 (2d Cir. 1988). First, the evidence must be new and not merely cumulative of prior evidence in the record; second, the evidence must be material to the relevant time period and might have influenced the SSA to decide the claim differently; and third, there must be good cause for the claimant's failure to present the evidence earlier. Id.

**2.    The Appeals Council's Decision**

Here, the Appeals Council indicated that it had received additional evidence which it is making part of the record, namely, Exhibit 34F (records from Rochester General Hospital dated November 24, 2014, to January 12, 2015); Exhibit 35F (records from Pain

Interventions dated November 17, 2014); Exhibit 36F (records from Monroe County Department of Human Services dated September 29, 2014); Exhibit 37F (records from Monroe County Department of Social Services dated January 2, 2015); and Exhibit 38F (a letter from Dr. Maggio dated June 30, 2014).

The Appeals Council declined to review the ALJ's decision. As relevant to the "additional evidence listed on the enclosed Order [(T.5)]," the Appeals Council "found that this information [(which included Exhibit 37F)] does not provide a basis for changing the Administrative Law Judge's decision." (T.2). Exhibit 37F is the January 2, 2015 Physical Assessment for Determination of Employability completed by consultative physician Dr. Harbinder Toor at the behest of the Monroe County Department of Human Services. (T.632-44 (Exhibit 37F)).

Dr. Toor noted that on examination, Plaintiff was in "excruciating pain" and used braces on her wrists and hands. (T.641). Her gait was "slightly unsteady" and she had a "tendency to lose balance." declined to heel-toe walk or squat. Her vision was slightly blurred, more on the right than left. She used a hearing aid in her left ear; Dr. Toor noted that he had to speak "moderately loud" even with it in place. There was tenderness in her neck and right groin.  She had reduced range of motion in her cervical and lumbar spine and shoulders. She had full ranges of motion in her elbows and wrists, and straight-leg-raise testing was

negative. Dr. Toor noted that she "gets dizziness and vertigo when she lays [sic] down on examination table." Plaintiff had "[t]ingling, numbness, and burning type pain" in her legs, lower wrists, arms, and hands. Dr. Toor noted that her grip strength was reduced (2/5) in both hands, and her finger dexterity was not intact bilaterally. He stated that she has "moderate to severe difficulty grasping, holding, writing, tying shoelaces, zipping a zipper, buttoning a button, manipulating a coin, or holding objects." (T.641). Dr. Toor opined that Plaintiff was "very limited" (defined as 1-2 hours) in walking, standing, pushing, pulling, bending, using her hands, using. Her ability to lift or carry was "very limited" (defined as "occasionally" able to lift 10 pounds). (T.642). She was "moderately limited" (defined as 2-4 hours) in sitting and using public transportation. (T.642). Dr. Toor opined that Plaintiff was unable to participate in any activities other than treatment or rehabilitation for three-to-six months. (T.643).

As Plaintiff notes, Dr. Toor's report was dated January 2, 2015, and therefore falls within the relevant period, insofar as it is prior to the ALJ's January 30, 2015 decision. See, e.g., Baladi v. Barnhart, 33 F. App'x 562, 564 (2d Cir. 2002) (unpublished opn.) (new evidence forms part of the administrative record under review "only to the extent that it relates to the time frame encompassed in the ALJ's decision"). Therefore, the Appeals Council could not

have rejected it on the basis that it was not relevant. See id. The evidence also is not merely cumulative of prior evidence in the record. Furthermore, it contains detailed functional limitations supported by Dr. Toor's clinical findings, and the Court finds that it is material, insofar as it might have influenced the SSA to decide the claim differently. Finally, there is no suggestion by the Commissioner that Plaintiff lacked good cause for presenting it sooner. The Court finds that the Appeals Council erred in disregarding the import of Dr. Toor's consultative opinion.

### C. Erroneous Weighing of Treating Physician's Opinions

#### 1. Legal Principles

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal and other citations omitted). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Id. (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). The "good reasons" rule exists to

"ensur[e] that each denied claimant receives fair process[.]"
Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007).
Accordingly, an ALJ's "'failure to follow the procedural
requirement of identifying the reasons for discounting the opinions
and for explaining precisely how those reasons affected the weight'
given '*denotes a lack of substantial evidence*, even where the
conclusion of the ALJ may be justified based on the record[,]'"
Blakely, 581 F.3d at 407 (quotation omitted; emphasis in original).

## 2. Dr. Maggio's Opinions

On August 1, 2013, Dr. Maggio completed a form titled,
"Meniere's Disease Medical Source Statement." (T.435-38).
Dr. Maggio indicated that he saw Plaintiff four to five times a
year. She had a history of frequent attacks of balance disturbance,
tinnitus, and progressive hearing loss; other associated symptoms
included vertigo, nausea, malaise, sensitivity to noise, mood
changes, concentration difficulties, and fatigue. Her medications
included Dramamine and Dyazide, which exacerbated her symptoms.
Plaintiff experienced approximately 12 episodes related to her
Meniere's disease per month; each episode typically lasted two
days. Plaintiff could anticipate an episode 60 minutes before it
began and was able to take appropriate safety precautions. Episodes
were precipitated by stress, exertion, sudden movement, certain
kinds of light, and computer screens; they were aggravated by noise
and moving around; and they were relieved by lying down and not

moving. During an episode, Plaintiff was fatigued and unable to move. After an episode, she experienced exhaustion, irritability, and severe headaches for one day. Dr. Maggio opined that Plaintiff was "[i]ncapable of even low stress work," due to concentration difficulties during, and work absences due to, episodes of Meniere's disease. Dr. Maggio further opined that prognosis was poor, that her impairments were expected to last at least 12 months, and that she would be unable to perform basic work activities during an episode. Plaintiff's symptoms would interfere with her attention and concentration 25 percent of an 8-hour workday. She would have good days and bad days, and would miss work more than 4 days a month due to her symptoms. Dr. Maggio stated that Plaintiff was unable to "sit/stand/walk/lift/bend," but noted that he was "not qualified to determine [the] degree of disability." (T.438). According to Dr. Maggio, Plaintiff had been "disable[d] since 2011." (T.437).

Also, in letters dated June 30, 2014, and July 28, 2014, Dr. Maggio stated that Plaintiff had "a history of a chronic condition [i.e., Meniere's disease] which leaves her disabled when she has a flare up of symptoms," and that Plaintiff was "disabled." (T.482, 645). In the July 2014 letter, Dr. Maggio described the disability as "likely permanent." (T.482).

### 3.    The ALJ's Weighing of Dr. Maggio's Opinions

Referring to Dr. Maggio's July 28, 2014 letter (Hearing Exhibit 22F (T.482)), "stat[ing] that the claimant continued to be disabled and it was likely permanent[,]" the ALJ indicated that this opinion was entitled to only "limited weight[,]" (T.22), because it pertained to the ultimate issue reserved to the Commissioner. "In addition," the ALJ noted, "the opinion failed to specify the claimant's functional limitations." (T.23).

The ALJ then addressed Dr. Maggio's Meniere's Disease Medical Source Statement and determined it was entitled to "limited weight" (T.23 (citing Exhibit 18F)), because it "failed to specify how often the claimant was likely to experience attacks that would require the claimant to miss two days of work." (Id.). The ALJ also found that there was "no objective evidence" to support Dr. Maggio's assertion that Plaintiff was likely to be off-task 25 percent during a Meniere's attack. (Id.). The ALJ then asserted that Dr. Maggio "conceded that he was not qualified to give an opinion on such issues [i.e., whether Plaintiff was likely to miss more than four days of work per month because of her impairments]." (T.23).

The Court finds that the ALJ mischaracterized Dr. Maggio's Meniere's Disease Medical Source Statement when she asserted that he "conceded that he was not qualified to give an opinion on" whether was Plaintiff was likely to miss more than four days of

work per month because of her impairments. What Dr. Maggio actually stated was that he was "not qualified to determine degree of disability." (T.438). He did not say that he was unqualified to provide opinions in response to the specific questions in the form, such as how many days of work she was likely to miss and how much of the time she was likely to be off-task due to her symptoms. In any event, if Dr. Maggio had opined on Plaintiff's "degree of disability," the ALJ would have rejected such an statement as impermissibly encroaching on an issue reserved to the Commissioner—just as she did in regards to his July 28, 2014 letter indicating that Plaintiff's disability was "likely permanent." The Court therefore finds that this was not a good reason for discounting Dr. Maggio's Meniere's Disease Medical Source Statement.

The ALJ also took issue with Dr. Maggio's recommendation that Plaintiff obtain opinions from "neurology and ENT to support her disability claim," (T.438). Her decision makes clear that she found that this further undermined the validity of his Meniere's Disease Medical Source Statement. The Court finds that this is not a good reason for discounting Dr. Maggio's opinion insofar as it amounts the ALJ unjustifiably drawing an adverse inference against Plaintiff. Usually, Social Security adjudicators draw adverse inferences against claimants where their claims lack medical opinions or other support from acceptable medical sources. Here,

the ALJ penalized Plaintiff because one of her treating physicians recommended that she seek additional opinions from medical specialists as to her limitations—precisely the type of evidence which the Commissioner's own regulations generally accord greater weight. This is a version of evidentiary cherry-picking. Moreover, it flies in the face of the well-established tenet that Social Security proceedings are not adversarial in nature. Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004)("Because Social Security disability determinations are non-adversarial, 'the Commissioner is not a litigant and has no representative at the agency level. . . .'") (quoting Seavey v. Barnhart, 276 F.3d 1, 8 (1st Cir. 2011)).

As Plaintiff argues, Dr. Maggio's Meniere's Disease Medical Source Statement is supported by the clinical and diagnostic testing that led to Plaintiff being diagnosed with the disease. Dr. Maggio also connected his opinion on her functional limitations to her Meniere's symptoms (vertigo, nausea, vomiting, malaise, sensitivity to noise, mood changes, mental confusion, difficulty concentrating, fatigue, and exhaustion). (T.436). Dr. Maggio's opinion, as Plaintiff notes, is consistent with medical records showing that Plaintiff suffers episodes of vertigo lasting from 24 to 36 hours, and that prior to the relevant period, Plaintiff sustained work with this condition and frequently required medical absence from work due to attacks. (See Plaintiff's Brief ("Pl.'s Br.") (Dkt #10) at 19 (citing T.267, 268, 270, 272, 273, 276)).

Furthermore, as Plaintiff argues, the ALJ's conclusory assertion that there is "no objective evidence" to support Dr. Maggio's opinion regarding Plaintiff's limitations does not constitute a "good reason" as required by the relevant regulations and case law. See, e.g., Cordero v. Colvin, No. 1:15-CV-00845(MAT), 2016 WL 6829646, at *3 (W.D.N.Y. Nov. 21, 2016) ("[T]he ALJ stated that [treating physician]'s opinion was 'without substantial support from the other evidence of record, which obviously renders it less persuasive.' The ALJ did not identify, much less allude to, which evidence of record failed to offer 'substantial support' for [treating physician]'s opinion. This was error, and it precludes the Court from conducting a meaningful review of whether the ALJ's decision is supported by substantial evidence.") (citing Ely v. Colvin, No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016) ("[T]he ALJ's statement that the rejected opinions were 'not supported by the record as a whole' is too conclusory to constitute a 'good reason' to reject the treating psychiatrist's opinions. . . .Without identifying the alleged inconsistencies in the record, the ALJ has failed to provide any basis for rejecting [the doctor]'s opinions."); Marchetti v. Colvin, No. 13-CV-02581 KAM, 2014 WL 7359158, at *13 (E.D.N.Y. Dec. 24, 2014) ("Under the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on such conclusory assertions of inconsistency with the medical record.")). In her brief, the

Commissioner attempts to supply specific items of evidence with which Dr. Maggio's opinion is inconsistent, but the Court cannot accept these belatedly-offered rationales. See, e.g., Snell v. Apfel, 177 F. 3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action.").

Indeed, Dr. Maggio's opinion is supported by the March 31, 2015 letter-report of Dr. Paul O. Dutcher, Jr., a specialist in otolaryngology, to Dr. Maggio. The Appeals Council found that this report was "new information is about a later time" and therefore "it does not affect the decision about whether [the claimant] [was] disabled beginning on or before January 30, 2015." (T.2). However, "[t]he fact that medical evidence did not exist until after the ALJ's decision does not necessarily make it irrelevant to the claimant's condition during the relevant time period; evidence of the nature of the condition after the relevant time period may bear on the severity of the condition during the relevant time period." Thompson v. Colvin, No. 12 CIV. 7024 PAE HBP, 2014 WL 7392889, at *21 (S.D.N.Y. Dec. 29, 2014) (citing Pollard v. Halter, 377 F.3d 183, 193-94 (2d Cir. 2004); Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991)). Such is the case with Dr. Dutcher's report, which indicates that Plaintiff's longstanding, "major issue is the recurrent episodes of dizziness/vertigo[,]" which "occur approximately once a week to

once every 2 weeks without warning. There is associated nausea and vomiting." (T.646). Once the nausea and vomiting "settles down, she is able to take Dramamine and has found this somewhat effective in helping control her symptoms[,]" but she is "in bed for 2-3 days with these episodes." (Id.). At that time, Dr. Dutcher recommended a trial of Valium for the acute attacks of dizziness/vertigo. He noted that while she is "moderately functional between episodes, she continues to have significant imbalance[,]" and "falls a couple of times per week suffering bruises, but has had no serious injuries" and "has had difficulty with her memory." (Id.).

## VI. Remedy

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . ., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Courts have held that a remand pursuant to the fourth sentence of Section 405(g) is appropriate in cases where the Commissioner's decision is the product of legal error. See, e.g., Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where . . . the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.") (internal quotation marks omitted). Although it is less typical, reversal without remand is the appropriate disposition when there

-22-

is "persuasive proof of disability" in the record, <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980), and further proceedings would be of no use as there is no reason to conclude that additional evidence might support the Commissioner's claim that the claimant is not disabled, <u>Butts v. Barnhart</u>, 388 F.3d 377, 385–86 (2d Cir. 2004).

Here, none of the regulatory factors support a decision not to afford controlling weight to treating physician Dr. Maggio's Meniere's Disease Medical Source Statement Mental Assessment, which is supported by substantial evidence in the record and is consistent with the reports of consultative physician Dr. Toor and treating physician Dr. Dutcher—both of which the Appeals Council found did not justify its review of the ALJ's decision. The ALJ also cherry-picked the record in order to formulate the RFC and failed to justify her decision to ignore the portions of consultative physician Dr. Eurenius' opinion imposing limitations on Plaintiff's manipulative abilities.

In the present case, the record has been fully developed, and further administrative proceedings would serve no purpose. Had the foregoing errors in weighing opinion evidence not occurred, and had the RFC assessment properly reflected the extent of Plaintiff's impairments, she would have been found disabled. Accordingly, the Court finds that the matter should be remanded for calculation and payment of benefits. <u>See</u>, <u>e.g.</u>, <u>Dueno v. Colvin</u>,

No. 1:15-CV-01042(MAT), 2018 WL 1180225, at *10 (W.D.N.Y. Mar. 7, 2018) (finding that if the opinions of claimant's treating sources been accorded their proper weight, and if the consultative physicians' opinions been properly weighed rather than being based on the ALJ's selective parsing of the record, a finding of disability was compelled"); Spielberg v. Barnhart, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . .").

## VII. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It therefore is reversed. Accordingly, Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    May 30, 2018
          Rochester, New York.